IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and, | ) | |
| | ) | Civ. Action No.: 3:04-0841 |
| SHEENA SMITH, | ) | |
| | ) | Judge Nixon |
| Plaintiff-Intervenor, | ) | Magistrate Judge Brown |
| | ) | |
| v. | ) | Jury Demand |
| | ) | |
| CONE SOLVENTS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM ORDER</u>

Pending before the Court is Defendant's Motion for Summary Judgment and supporting documents (Doc. Nos. 28-30). Plaintiff and Plaintiff-Intervenor have filed Responses and supporting documents (Doc. Nos. 32-43), to which Defendant has replied (Doc. Nos. 44-46). For the reasons stated herein, the Court DENIES Defendant's Motion for Summary Judgment in its entirety.

## I.  BACKGROUND

### A.  Procedural History

On September 17, 2004, the Equal Employment Opportunity Commission ("EEOC") filed this complaint against Defendant Cone Solvents, Inc. (the "Company"). (Doc. No. 1.) The EEOC alleges that the Company engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended. (<u>Id.</u> at 1.) Specifically, the Company subjected

Sheena Smith and two other former employees to sexual harassment.  (Id.)  On January 14, 2005,

Smith filed a motion to intervene in the lawsuit, which this Court granted.  (Doc. Nos. 11, 14.)

Smith filed additional claims against the Company for constructive discharge and is seeking

backpay, loss of earning capacity, and pre-judgment interest.  (Doc. No. 15.)

### B.  Factual History

#### 1.  *Alisha Haggard*

Alisha Haggard began working as a receptionist for Defendant in September 1998.  (Doc.

No. 28, Ex. 2, Haggard Depo. at 10.)  At the time of her hiring, Haggard was eighteen years old.

(Id. at 117; Doc. No. 33, Ex. 15.)  A month later, Haggard was transferred to a store auditing

position where she continued her employment until May 1999.  (Doc. No. 28, Ex. 2, Haggard

Depo. at 10-11.)  At this time, Haggard left the Company to pursue another job because she did

not like the environment.  (Id. at 47-50, 53.)  In August 1999, after leaving her other job,

Haggard returned to her former position with Defendant.  (Id. at 54.)  Haggard testified that she

did not seek employment elsewhere prior to returning to the Company.  (Id.)  She further stated

that she returned to the Company because she needed immediate employment to pay her bills.

(Id.)

Haggard testified that during her initial period of employment with the Company, she

was told by her first supervisor, Julie Alexander, that Tom Cone, Sr., President of Cone Oil, was

a "pervert."  (Id. at 31, 46.)  Subsequently, Cone engaged in conduct, which, in part, gave rise to

this action.  This conduct included:

- approximately five occasions on which Cone hugged her and his hand slid down

-2-

to her bottom (Id. at 23-24);

- eight to ten occasions where Cone looked at Haggard's chest and made a comment, such as "hum" or "I like that" (Id. at 39-40);

- one occasion where Cone's hand "sort of" rubbed her buttocks (Id. at 27);

- one occasion where Cone displayed a picture of a naked woman on a computer screen in front of Haggard and several other employees (Id. at 28-29);

- one occasion where Cone grabbed the zipper on her shirt and jiggled it (Id. at 24-25.); and

- one occasion where Cone asked Haggard if she wanted to go get a drink with him shortly after she began working there (Id. at 18-20).

Haggard further testified that after she returned to the Company in August 1999, similar incidents occurred between Haggard and Cone that made her feel uncomfortable and degraded. (Id. at 106-107, 118.) Specifically, Haggard asserted that Cone:

- hugged her five to six additional times, letting his hand slide down to her bottom (Id. at 71);

- occasionally hugged her and appeared to look down her shirt, which caused her to feel degraded (Id. at 55);

- "wriggled his tongue" at Haggard on one occasion (Id. at 57); and

- on one occasion shook his arms and said "jiggle, jiggle, jiggle," as Haggard walked down the hallway, which she perceived to be a reference to her breasts moving as she walked (Id. at 58).

Haggard reported some of these events to Dee Summers and Caroline Meyer, her

-3-

supervisors.  (Id. at 30-32, 38-40.)  Summers corroborated that on several occasions, Haggard

reported that Cone "made inappropriate statements of a sexual nature to her or touched her

inappropriately."  (Doc. No. 35, Summers Decl. ¶ 3.)  Summers also declared that Haggard was

reduced to tears "because she was so embarrassed about what was happening to her."  (Id. ¶ 4.)

In response to Haggard's complaints, Summers informed Haggard to write the incidents down

and Summers would attempt to come to Haggard's work area whenever Cone was present.  (Id. ¶

6; Doc. No. 28, Ex. 2, Haggard Depo. at 32-33, 38-40.)  There is no evidence that either

Summers or Meyer took any further action.  (Doc. No. 28, Ex. 2, Haggard Depo. at 38.)

Summers explained that she did not tell anyone because she believed that Haggard would be

fired "because it would be Mr. Cone's word against hers."  (Doc. No. 35, Summers Decl. ¶ 5.)

On more than one occasion, Haggard told Angela Holly, another employee at the

Company, that Cone "made her feel uncomfortable," and that "she was afraid to be alone with"

Cone.  (Doc. No. 34, Holly Decl. ¶¶ 4-5.)  Haggard did not, however, report her feelings to

senior management.  Thus, Haggard did not speak to Susan Cone, Cone's daughter, who was in a

management position in the Company and who was listed in the Company's employee handbook

as the person to contact regarding any sexual harassment allegations.  (Doc. No. 28, Ex. 2,

Haggard Depo. at 35-36, 41-45.)  Haggard did not speak with Susan Cone because she did not

believe that Susan Cone, as the daughter of the President of the Company, would act on the

allegations.  (Id. at 41-45.)  Furthermore, Haggard feared losing her job if she spoke with Susan

Cone.  (Id.)  Similarly, Haggard did not report Cone's conduct to Don Gadd, another supervisor

at the Company, whom she regarded as a friend.  (Id. at 100-02.)  However, Haggard did inform

Gadd that she did not like being around Cone.  (Id. at 102.)  Haggard did not say anything to

-4-

Cone regarding his behavior. (Id. at 56-57.) Additionally, for a period of time during her employment at the Company, Haggard kept a photograph of herself and Cone hugging and smiling displayed in her cubicle at work. (Id. at 109.)

### 2. Kristene Newton

In May 2001, Kristene Newton began working for the Company as a receptionist. (Doc. No. 28, Ex. 5, Newton Depo. at 17-18.) Newton was twenty-two when she began working at the Company. (Doc. No. 33, Ex. 15.) Newton testified that during her period of employment with the Company, Cone engaged in conduct that caused her to feel embarrassed and uncomfortable. (Doc. No. 28, Ex. 5, Newton Depo. at 34, 40-41, 64-65, 81.) Specifically, Newton asserts that Cone:

- came behind her desk, which was in an enclosed reception area, and hugged her on several occasions (Id. at 34-36);

- once asked her whether she would like to go skinny dipping with him (Id. at 40-41);

- on several occasions came into the enclosed reception area and asked her to stand up from her chair, had her turn around so he could see what she was wearing, and told her she looked nice (Id. 42-43, 65);

- on several occasions appeared to look down her shirt or at her breasts (Id. at 64).

Newton reported these incidents to Meyer. (See id. at 33, 38-44.) Meyer responded by laughing and telling her that Cone had done similar things to Haggard and that he had shown pornographic videos to other women. (Id. at 44.) There is no evidence demonstrating that

-5-

Meyer took any action as a result of Newton's complaints. (See id. 33, 38-44.)

In March 2002, Newton left her job with the Company during a phone argument with Vonda Proffitt, her supervisor, regarding Newton's absences and tardiness. (Id. at 38-39.) Newton was contacted by Meyer and asked to return to work. (Id. at 46.) Newton declined to return to work for the Company. (Id.) She informed Newton that she did not want to return because she did not like working for Proffitt, Cone made her feel uncomfortable, and the Company tried to make her work while she was sick. (Id. at 47.) Newton alleges that Meyer "promised [her] that things were going to change." Specifically, that Proffitt would no longer be her supervisor and that Cone would be "going out of town a lot." (Id. 46-47.) Despite Meyer's efforts, Newton still refused the offer. (Id. at 46-48.) Newton subsequently referred Sheena Smith, her younger sister, to Meyer. (Id.) Newton did not inform Smith about Cone's conduct at the Company. (Id. at 48.)

### 3. *Sheena Smith*

Smith was employed at the Company from July 2002 to November 2002. (Doc. No. 28, Ex. 7, Smith Depo. at 86-87; Doc. No. 28, Ex. 2, Haggard Depo. at 82; Doc. No. 33, Ex. 5.) Smith was nineteen years old when she was hired for the position. (Doc. No. 33, Ex. 5.) Smith testified that during her employment with the Company, Cone would act in a way she considered to be of a sexual nature approximately once or twice a week. (Doc. No. 28, Ex. 7, Smith Depo. at 127.) Specifically, Smith testified that Cone:

- showed her a picture of a topless women approximately a month after she started with the Company, (Id. at 84);

-6-

- tickled her side two or three times (Id. at 78);

- occasionally would tell her that he liked what she was wearing and that she needed to wear more revealing clothes, such as low cut shirts and short skirts (Id. at 60, 66-69);

- asked her to stand up so that he could see what she was wearing (Id. at 73-74);

- on several occasions, would stand at Smith's desk and appear to be looking down her shirt (Id. at 73-74);

- on one occasion, after seeing Smith with an eyebrow piercing, allegedly stated that he knew a girl that had more piercings in other places, told Smith that she should think about getting piercings in other places, asked if she had other piercings, and then asked to see her belly button piercing (Id. at 76);

- touched her left breast after tickling her, which caused Smith to tell Cone to "watch out," to which Cone responded, "I'm bad aren't I?" and laughed (Id. at 78);

- rubbed Smith's leg under her skirt as she stood next to his desk (Id. at 81).

Smith testified that she felt that Cone was looking at her like she was a "piece of meat." (Id. at 128.) Smith further stated that Cone's activities made her "mad and a little embarrassed," and that she was always worried about what Cone might say or do. (Id.)

During her employment, Smith complained to Meyer, her supervisor, on several occasions regarding Cone's behavior. (Id. at 59-60, 64, 108.) Meyer appears to dispute that Smith came to her on multiple occasions, as she wrote in a memo dated December 11, 2002 that "on [Smith's] . . . last day at work she mentioned to me that [Cone] . . . had made her feel

-7-

uncomfortable with some remarks.  She had never mentioned to me previously that he had made her feel uncomfortable."  (Doc. No. 28, Ex. 8.)  While the record reveals that Meyer related this concern to her supervisor Gadd, the record is devoid of any action on her part in relation to other alleged complaints by Smith.  (Id.; Doc. No. 28, Ex. 7, Smith Depo. at 71, 128-29.)  Apart from informing Cone to "watch out" after touching her breast, Smith did not inform Cone that his actions were objectionable.  (Id. at 106.)

In late October 2002, Smith gave the Company her two-week notice of resignation.  (Id. at 24.)  She subsequently resigned informing Meyer that she was moving to Texas to take care of a sick relative.  (Id. at 21-22.)  Smith also advised Meyer that she was leaving because of Cone's inappropriate statements and actions, but did not elaborate further.  (Id. at 86.)  Smith testified that she was motivated to quit because of the work environment, specifically "the sexually related comments and verbal and physical things."  (Id. at 129-30.)  Smith testified that she was moving back to Texas regardless of the alleged harassment, but that she resigned sooner than she planned because of the work environment.  (Id. at 133, 135-36.)

On November 25, 2002, Smith filed a charge with the EEOC alleging that Cone sexually harassed her.  (Doc. No. 28, Ex. 9.)  On September 30, 2003, the EEOC issued a Letter of Determination finding that Sheena Smith, the Charging Party, as well as "several other females were subjected to" sexual harassment.  (Doc. No. 28, Ex. 10.)  Accordingly, the EEOC found "reasonable cause to believe that [Sheena Smith, the] Charging Party and a class of females have been subjected to sexual harassment."  (Id.)  The EEOC issued a proposed Conciliation Agreement to the Defendant on February 2, 2004.  (Doc. No. 28, Ex. 11.)  The Conciliation Agreement requested monetary compensation in the amount of $10,800 for Smith's period of

-8-

employment with the Company and contained a provision that the Company would not "engage in unlawful discrimination." (Id. at 1.) Defendant rejected the Conciliation Agreement and the EEOC issued a Notice of Conciliation Failure on March 5, 2004. (Doc. No. 33, Ex. 12.)

## II.      STANDARD OF REVIEW

Summary judgment is appropriate when there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Generally, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1998) (quoting Fed. R. Civ. P. 56(c)). All the facts and the reasonable inferences to be drawn from those facts must be viewed in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 573 (6th Cir. 2003) (en banc).

In order to succeed, the moving party must show that there is an absence of evidence to support the non-moving party's case and that "the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, 93 F.3d

230, 233 (6th Cir. 1996). A movant for summary judgment makes a sufficient showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the non-movant's case. See Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. See id.

The non-movant, however, may not rely solely on conclusory allegations in the complaint to defeat a motion for summary judgment, but must come forward with affirmative evidence that establishes its claims and raises genuine issues of material fact. Id. at 324. The "mere possibility" of a factual dispute is not enough. Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986). A genuine issue of material fact is one which, if proven at trial, would lead a reasonable fact finder to find in favor of the non-moving party. Anderson, 477 U.S. at 247-48. The substantive law involved in the case will underscore which facts are material and only disputes over outcome-determinative facts will bar a grant of summary judgment. Id. at 248.

Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted. See Celotex, 477 U.S. at 317. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989) (citations omitted). On the other hand, if this Court determines that a reasonable fact finder would be able to return a verdict for the non-moving party, it must deny summary judgment. See Matsushita, 475 U.S. at 249-50.

-10-

### III.    ANALYSIS

#### A.    Conciliation

Defendant asserts that the EEOC cannot seek relief on behalf of Newton or Haggard because Defendant was deprived of its right to conciliate their claims prior to the filing of this lawsuit.  (Doc. No. 29 at 10.)  Specifically, Defendant alleges that while the Letter of Determination "generally mentioned 'a class of females,' at no point during the conciliation process did the EEOC indicate that it was seeking relief on behalf of anyone <u>other than</u> Ms. Smith."  (Doc. No. 44 at 1) (emphasis in original).  Further, Defendant alleges that the Conciliation Agreement "contained no reference to a class of females or individuals other than Ms. Smith."  (<u>Id.</u> at 2.)  Therefore, Defendant seeks dismissal of the EEOC's claims on behalf of Newton and Haggard.  (<u>Id.</u> at 18.)  For the reasons discussed below, the Court finds that the EEOC has met its conciliation requirement and is not precluded from filing a claim on behalf of Newton and Haggard.

"Whenever a charge is filed . . . [i]f the Commission determines . . . that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."  42 U.S.C. § 2000e-5(b).  Thus, after the EEOC makes a reasonable cause determination, it must attempt to conciliate the discrimination claim with the employer before it can initiate litigation in the district court.  <u>EEOC v. Keco Industries, Inc.</u>, 748 F.2d 1097, 1101 (6th Cir. 1984).  Conciliation is "a flexible and responsive process which necessarily differs from case to case."  <u>EEOC v. Kaiser Found. Health Plans, Inc.</u>, No. 1:98 CV 2839, 1999 WL 420116 (N.D. Ohio May 12, 1999) (citing <u>EEOC v. Prudential Fed. Sav. & Loan Ass'n</u>, 763 F.2d 1166,

-11-

1169 (10th Cir. 1985)).  The EEOC need only make a sincere and reasonable effort to negotiate the charge and possible settlements.  Id.  Although the EEOC must make a good faith effort to conciliate the claim prior to filing a lawsuit, the EEOC is under no duty to attempt further conciliation after an employer rejects its offer.  Keco Industries, Inc., 748 F.2d at 1101-02.  Only after the EEOC is unable to obtain a conciliation agreement may the agency file suit.  Id. at 1101.  If the conciliation attempt by the EEOC is challenged, "[t]he district court should only determine whether the EEOC made an attempt at conciliation.  The form and substance of those conciliations is within the discretion of the EEOC as the agency created to administer and enforce our employment discrimination laws and is beyond judicial review."  Id. at 1102.  If a district court finds that the conciliation efforts by the EEOC fall short of the good faith effort required, the appropriate remedy is not a dismissal, but a stay of the proceeding so that conciliation may take place.  Kaiser Found. Health Plans, Inc., 1999 WL 420116.

A lawsuit filed by the EEOC that ensues a failed conciliation attempt is not limited to the specific charge raised in the conciliation process.  The Sixth Circuit has held that the EEOC is not precluded from bringing a claim against a party where the litigation reasonably was expected to grow out of the initial charge.  Keco Industries, Inc., 748 F.2d at 1102; see also EEOC v. Mike Fink Corp., No. 3:96-0790, 1998 WL 34078445, at *1 (M.D. Tenn. July 17, 1998).  In Keco Industries, Inc., a former female employee of Keco Industries filed an unlawful discrimination charge with the EEOC.  Keco Industries, Inc., 748 F.2d at 1098.  After an investigation, the EEOC issued a reasonable cause determination finding the employee's allegations to be true and found that Keco Industries had no female buyers, maintained sex-segregated job classifications and paid lower wages to female classifications.  Id.  The EEOC subsequently brought suit and

-12-

the complaint alleged claims specific to the former employee, as well as claims regarding other female employees. Id. Keco Industries filed for summary judgment arguing that the EEOC could not pursue the class based claims because it did not conciliate those claims. Id. at 1099. The Sixth Circuit rejected this argument, stating:

> [T]he EEOC has merely broadened the scope of [the former employee's] . . . charge by alleging that KECO has engaged in sexual discrimination against all of its female employees in its assembly division. Consequently, the only difference between the EEOC's later charge and [the former employee's] . . . initial charge is the number of persons victimized by KECO's allegedly discriminatory practices. As this later class-based claim brought by the EEOC could have reasonably been expected to grow out of [the former employee's] . . . individual complaint of discrimination, no new additional proceedings were necessary.

Id. at 1101.

Similarly, in Mike Fink Corp., the defendant moved for summary judgment asserting that the EEOC did not have authority to file suit on behalf of the charging party and other women. 1998 WL 34078445, at *2. In that case, the conciliation agreement demanded that the defendant eliminate its males-only hiring policy, offer the charging party an employment position, and pay the charging party's out-of-pocket expenses. Id. After a failure to conciliate, the EEOC filed a claim on behalf of the charging party and on behalf of other women who were denied a position due to the employer's discriminatory hiring policy. The court denied the defendant's motion for summary judgment, holding that it is not beyond the EEOC's statutory authority to expand the complaint after a failure to conciliate and sue on behalf of all women affected by the defendant's policy. Id. at *4.

Similar to Mike Fink Corp. and Keco Industries, Inc. where the EEOC expanded the charging party's initial claim to include other similarly situated women, the addition of Newton and Haggard merely broadens the scope of the EEOC's initial charge and therefore is

-13-

permissible. The EEOC's claim on behalf of Smith, Haggard and Newton are all based on sexual harassment. Specifically, each party alleges that Cone created a hostile work environment. Each party's allegations describe similar incidents of touching and comments of a sexual nature. As a result "the only difference between the EEOC's later charge and [Smith's] . . . initial charge is the number of persons victimized." Keco Industries, Inc., 748 F.2d at 1100-01. Since Haggard's and Newton's claims are merely an expansion upon Smith's initial charge, their addition is permissible without further attempts to conciliate. Mike Fink Corp., 1998 WL 34078445, at *4; see also Keco Industries, Inc., 748 F.2d at 1101.

Moreover, in the present case Smith's Charge of Discrimination against the Company states that, "[t]o my knowledge I was not the only female treated in this manner by [Cone]." (Doc. No. 33, Ex. 6) (emphasis added). Further, the EEOC's Letter of Determination states that "[e]vidence of record indicates that several other females were subjected to similar treatment by [Cone] . . .," and that the "[EEOC] find[s] reasonable cause to believe that Charging Party and a class of females have been subject to sexual harassment." (Doc. No. 28, Ex. 10) (emphasis added). Defendant was on notice, therefore, that the EEOC was investigating conduct that affected a class of women. While it is unclear whether in Keco Industries, Inc. the reasonable cause finding included a specific reference to a "class," it did outline the fact that Keco Industries' policies affected other women because there were no female buyers, the job classifications were segregated based on sex and women were paid less. 748 F.2d at 1098. The Sixth Circuit found that the reference to policies affecting other women provided a sufficient basis for the EEOC's later class based claims. Id. at 1100-01. In this case, the reference to

-14-

"several other females," and a "class of females" in the Letter of Determination also constitutes sufficient basis for the EEOC's current claims regarding Newton and Haggard.

Defendant's assertion that dismissal is required because the proposed Conciliation Agreement did not include a reference to a class of women or attempt to resolve claims related to other women is equally unavailing. In Mike Fink Corp., the proposed conciliation agreement required the defendant to eliminate its males-only policy, but only offered monetary relief for the initial charging party. 1998 WL 34078445, at *2. The court found that the EEOC nevertheless possessed standing to now sue on behalf of other female employees allegedly injured by defendant's conduct. Id. at *4. In this case, the proposed Conciliation Agreement stated that Defendant "shall not engage in unlawful discrimination or unlawful retaliation of any kind against any person . . . ." (Doc. No. 28, Ex. 11.) However, it only offered monetary relief for Smith, the initial Charging Party. (Id.) As in Mike Fink Corp., the Court finds that the requirement in the Conciliation Agreement to eliminate the unlawful conduct with regard to other women, taken together with the notice in the Letter of Determination that the EEOC found other women were subjected to Cone's inappropriate conduct, and the similarity of the allegations against Cone, provides the EEOC with sufficient standing to sue on behalf of Haggard and Newton.

Defendant's reliance on EEOC v. Warshawsky & Co., No. 90 C 1352, 1993 WL 303097, at *1 (N.D. Ill Apr. 15, 1993) is misplaced. In Warshawsky, the EEOC issued a letter of determination finding that the defendant unlawfully discriminated against the charging party on the basis of pregnancy because the defendant terminated her after she asked for disability leave related to the pregnancy. Id. at *2. The EEOC also included in its determination the "issue of

-15-

discrimination against pregnant females as a class with regard to . . . [defendant's] practice of refusing to grant a leave of absence to any person employed for less than one year." Id. The EEOC found that the sick leave policy adversely affected the "employment opportunities of pregnant employees." Id. In the subsequent lawsuit, the EEOC filed a class action that not only included discharged pregnant women, but added nonpregnant women and female applicants. The court prohibited the inclusion of nonpregnant women and female applicants. Id. at *15. The court found that the EEOC attempted to seek redress for all the victims injured by the defendant's practices simply because all the discriminatory practices it sought to eliminate had been the subject of the conciliation process. Id. The court, however, found that while all the defendant's unlawful practices were included in the conciliation process, all the victims were not. Id. During the conciliation process, both parties were unaware of the nonpregnant and applicant victims and "only considered the impact on pregnant women." Id. Thus, nonpregnant claims could not have reasonably been expected to grow out of the initial charge and the EEOC's determination, and their inclusion in the lawsuit subjected the defendant "to a potentially much greater liability than had been anticipated." Id.

The present case does not expose the Defendant to much greater liability than had been anticipated by the conciliation process. Here, the conciliation process was explicit about the parameters of the unlawful conduct, as well as the victims of such conduct. The unlawful conduct was described as Cone's sexual and inappropriate comments and gestures, and the victims were described as a "class of females" subjected to such conduct. As long as the outline of the class is identified, each female within the "class" need not be specifically identified in the conciliation process. Indeed, in Warshawsky, the EEOC's initial determination identified a

-16-

"class" of pregnant women, but did not identify individual pregnant women affected by the discriminatory sick leave policy.  The individual pregnant women were identified later in the litigation for remedial purposes.  Id. at *6.  In sum, Defendant's failure to conciliate argument is without merit.


### B.      Hostile Work Environment

Defendant asserts that Plaintiff and Plaintiff-Intervenor failed to establish sufficient facts to support a hostile work environment claim.  (Doc. No. 29 at 11.)  There is a violation of Title VII "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citations omitted); see also Hafford v. Seidner, 183 F.3d 506, 512-13 (6th Cir. 1999).  A discriminatorily abusive work environment is one which,

> even [if it] does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers. Moreover, even without regard to these tangible effects, the very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of workplace equality.
>
> . . .
>
> So long as the environment would reasonably be perceived, and is perceived, as hostile and abusive, there is no need for it also to be psychologically injurious.

Harris, 510 U.S. at 22.  In order to establish the existence of a hostile work environment based on sex, the plaintiff must show that (1) she was a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on her sex; (4) the

-17-

harassment created a hostile work environment; and (5) the existence of employer liability.

Clark v. United Parcel Serv., Inc., 400 F.3d 341, 347-48 (6th Cir. 2005); Moore v. KUKA

Welding Sys., 171 F.3d 1073, 1078-79 (6th Cir. 1999); Hafford, 183 F.3d at 513.

A plaintiff alleging hostile work environment must establish that the environment was

both objectively hostile and that she subjectively perceived the environment to be hostile.

Williams v. General Motors Co., 187 F.3d 553, 564 (6th Cir. 1999).  The Supreme Court has

held:

> Conduct that is not severe or pervasive enough to create an objectively hostile or
> abusive work environment - an environment that a reasonable person would find
> hostile or abusive - is beyond Title VII's purview.  Likewise, if the victim does not
> subjectively perceive the environment to be abusive, the conduct has not actually
> altered the conditions of the victim's employment, and there is no Title VII violation.

Harris, 510 U.S. at 21-22 (emphasis added).  Whether a work environment is hostile and abusive

is determined by looking at the totality of the circumstances.  See Hafford, 183 F.3d at 512; see

also Williams, 187 F.3d at 562-64.  The circumstances to examine may include:

> the frequency of the discriminatory conduct; its severity; whether it is physically
> threatening or humiliating, or a mere offensive utterance; and whether it
> unreasonably interferes with an employee's work performance.  The effect on the
> employee's psychological well-being is, of course, relevant to determining whether
> the plaintiff actually found the environment abusive.  But while psychological harm,
> like any other relevant factor, may be taken into account, no single factor is required.

Harris, 510 U.S. at 23.  Thus, "even where individual instances of sexual harassment do not on

their own create a hostile environment, the accumulated effect of such incidents may result in

Title VII violation . . . .  Hence, courts must be mindful of the need to review the work

environment as a whole, rather than focusing single-mindedly on individual acts of alleged

hostility."  Williams, 187 F.3d at 563.

-18-

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of environment and that conduct must be extreme to amount to a change in the terms and conditions of employment." Hafford, 183 F.3d at 512-13 (internal quotations and citations omitted). In contrast, conduct that includes "an element of physical invasion," Williams, 187 F.3d at 563, or physical contact enhances the severity of the conduct for purposes of analyzing a claim of hostile work environment based on sex. See Burnett v. Tyco Corp., 203 F.3d 980, 984-85 (finding conduct of reaching inside plaintiff's blouse and placing a cigarette pack under bra strap to be severe and, "perhaps even constitut[ing] battery."). "The subjective test must not be construed as requiring that a plaintiff feel physically threatened. Instead, the victim must 'subjectively perceive the environment to be abusive.'" Williams, 187 F.3d at 566 (citing Harris, 510 US at 21).

While "the subjective component of the prima facie case does not require that a plaintiff report a hostile work environment," such reporting may be relevant to proving employer liability, the fifth element. Id. at 566-67. Generally, when the hostile environment is created by a "supervisor with immediate (or successively higher) authority over the employee," an employer is vicariously liable. Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). If no tangible employment action is taken against the employee, the employer may raise the affirmative defense "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. Where the individual charged with creating the abusive atmosphere is the president of the corporate-employer, however, then liability is automatically

-19-

imputed to the employer and the affirmative defense is not available even if the harassment did

not result in a tangible employment action. See id. at 789 (citing with approval lower court cases

holding employer-company liable where harassment was perpetrated by owner, partner or

corporate officer); see also Ackel v. Nat'l Communications, Inc., 339 F.3d at 376, 383 (5th Cir.

2003) (holding that affirmative defense does not apply when harassing supervisor is

"'indisputably within that class of an employer organization's officials who may be treated as the

organization's proxy . . . .'") (citing Faragher, 524 U.S. at 789); Johnson v. West, 218 F.3d 725,

730 (7th Cir. 2000) (same); Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d

493, 516 (9th 2000) (same).

The parties have not disputed Plaintiff's and Plaintiff-Intervenor's fulfillment of the first

three elements, as well as the last element, of a sexual harassment hostile work environment

claim. Smith, Haggard, and Newton, as female employees, are members of a protected class.

Moreover, they have testified that they were subject to Cone's unwelcome sexual harassment.

(Doc. No. 28, Ex. 2, Haggard Depo. at 106- 107, 118; Doc. No. 28, Ex. 5, Newton Depo. at 34,

40-41, 64-65, 81; Doc. No. 28, Ex. 7, Smith Depo. at 127-28.) Further, Cone's advances were

based on their status as females. Finally, as the owner of the Company, employer liability is

automatically imputed. Faragher, 524 U.S. at 789. Thus, the only requirement of a sexual

harassment claim that is in dispute is whether the alleged harassment created a hostile work

environment.

Defendant asserts that Plaintiff and Plaintiff-Intervenor have failed to establish a hostile

work environment because the alleged harassment was neither severe or pervasive. (Doc. No. 29

at 11.) Specifically, Defendant asserts that although it does not dispute that Cone engaged in

-20-

offensive conduct, this conduct was not severe or pervasive enough to create a subjectively or objectively hostile environment.  (Id. at 14, 16, 18.)  For the reasons discussed below, the Court finds that Plaintiff and Plaintiff-Intervenor have alleged sufficient facts that a rational trier of fact could conclude that Defendant's conduct was severe and pervasive enough to create a subjectively and objectively hostile environment.

In this case, all three women state that they subjectively perceived the environment to be abusive.  (Doc. No. 28, Ex. 2, Haggard Depo. at 106-107, 118; Doc. No. 28, Ex. 5, Newton Depo. at 34, 40-41, 64-65, 81; Doc. No. 28, Ex. 7, Smith Depo. at 127-28.)  Specifically, when asked how Cone's behavior made her feel, Newton responded:  "Uncomfortable.  It made me feel belittled. It made me feel inferior."  (Doc. No. 28, Ex. 5, Newton Depo. at 81.)  Haggard also testified that Cone's behavior made her feel "degraded."  (Doc. No. 28, Ex. 2, Haggard Depo. at 55.)  Finally, Smith testified that Cone's behavior made her "mad and a little embarrassed" and that she felt like a "piece of meat."  (Doc. No. 28, Ex. 7, Smith Depo. at 128.) The Court finds that this testimony is sufficient for a reasonable trier of fact to conclude that Newton, Haggard, and Smith subjectively believed the environment was abusive.

The Court also finds that Plaintiff and Plaintiff-Intervenor have alleged sufficient facts to demonstrate that a reasonable person could conclude that the environment was objectively hostile.  In a recent case, the Sixth Circuit has reaffirmed that although "there is no bright line rule as to what constitutes a hostile work environment, the plaintiff's allegations must depict conduct that could be construed as pervasive enough to alter the condition of her employment and to create an abusive situation."  Clark v. United Parcel Serv., Inc., 400 F.3d 341, 351 (6th Cir. 2005).  In Clark, plaintiffs Clark and Knoop filed sexual harassment claims against the

-21-

defendant company.  Id. at 344.  In that case, Knoop alleged that during her two-and-a-half year period of employment with the company, her manager told sexual jokes in front of her, twice placed his vibrating pager on her upper thigh asking if it "felt good," and once grabbed the back of her overalls, "as if trying to look down them."  Id. at 345.  Based on these assertions, the Sixth Circuit upheld the district court's grant of summary judgment on the basis that Knoop failed to make a prima facie showing that environment could be construed as a hostile work environment. Id. at 351-53.  The Sixth Circuit found that "three relatively isolated incidents over a period of approximately two and a half years," was not sufficiently severe or pervasive to support a hostile work environment claim.  Id. at 351.  In contrast, Clark suffered seventeen incidents of harassment, including a high-five grabbing incident and an incident where the manager threw his vibrating pager into her lap.  Id. at 352.  The Sixth Circuit found that although Clark asserted similar incidents of harassment as Knoop, summary judgment was inappropriate on Clark's claim because she presented "more of an ongoing pattern of unwanted conduct and attention." Id. at 353.  Thus, the court concluded that Clark had satisfied the prima facia requirement and overturned the lower court's grant of summary judgment for the defendant.  Id. at 352-53.

In this case, the Court finds that Smith, Haggard and Newton's allegations are more similar to those of Clark than Knoop.  All three women assert multiple allegations of harassing behavior spaced over a relatively short period of time.  During Haggard's initial nine-month period of employment she asserts approximately seventeen occasions where Cone engaged in sexually harassing conduct.  These incidents include six occasions of allegedly inappropriate touching.  (Doc. No. 28, Ex. 2, Haggard Depo. at 18-20, 23-25, 27-29, 39-40.)  During Haggard's second period of employment with the Company, she alleges nine additional incidents

-22-

of allegedly harassing behavior, out of which five to six incidents involved inappropriate touching. (Id. at 55-58, 71.) Similarly, Newton was employed with the Company for about eleven months. During this time, she alleges that Cone engaged in behavior amounting to sexual harassment on approximately four specific occasions, as well as hugging her and making suggestive comments on multiple occasions. (Doc. No. 28, Ex. 5, Newton Depo. at 34-36, 40-43, 65). Finally, Smith was employed with the Company for approximately four months. During her period of employment, she asserts that Cone subjected her to harassing behavior on approximately ten occasions, including one incident where Cone touched her breast and rubbed her leg under her skirt. (Doc. No. 28, Ex. 7, Smith Depo. at 60, 66-69, 71, 73-74, 76, 78, 81, 84.) Moreover, Haggard, Newton, and Smith held low-level positions and were all in their late teenage years or early twenties when the events in question occurred. In contrast, Cone was President of the Company and approximately sixty-five years old. Taking into account the totality of the circumstances, the frequency of the conduct, the physical aspect of some of the alleged conduct, the Court finds that Plaintiff and Plaintiff-Intervenor have asserted sufficient facts for a reasonable trier of fact to conclude that the hostile work environment was severe and pervasive.

Defendant asserts that the women's actions undercut their allegations that the hostile environment was pervasive and severe. (Doc. No. 29 at 14-15, 18.) To support its claim, Defendant indicates that Newton recommended her sister, Smith, for a position at the Company; Smith supplied the Company with two-weeks' notice and stated that she was moving back to Texas to take care of a sick relative; and Haggard returned to the Company after leaving her position, and displayed a photograph of Cone and herself hugging. (See id. at 13-18.) The

Defendant asserts that employees do not take such actions if an environment is pervasively and severely hostile. (Id.) While these arguments perhaps undercut Plaintiff's and Plaintiff-Intervenor's argument that the work environment was pervasively and severely hostile, they are not sufficient to grant summary judgment. At the very minimum, Defendant has raised a question of fact regarding this issue. Thus, the Court does not find summary judgment appropriate on this issue.

### C.     Constructive Discharge

Defendant further asserts that Smith has failed to allege sufficient facts to demonstrate that she was constructively discharged from the Company. (Doc. No. 29 at 15.) In order for a plaintiff to maintain an action for constructive discharge, she must show that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982) (quoting Bourque v. Power Elec. Mfg., 617 F.2d 61, 65 (5th Cir. 1980)); see also Pennsylvania State Police v. Suders, 542 U.S. 129, 146-47 (2004) (holding that plaintiff who advances a constructive discharge claim along with a hostile work environment claim "must show working conditions so intolerable that a reasonable person would have felt compelled to resign."). In the Sixth Circuit, a finding of constructive discharge "requires an inquiry into both the objective feelings of an employee, and the intent of the employer." Moore v. KUKA Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999). A showing of discrimination, by and of itself, is not enough to constitute constructive discharge. Geisler v. Folsom, 735 F.2d 991, 996 (6th Cir. 1984) (citing Clark v. Marsh, 665 F.2d 1168, 1173-74 (D.C. Cir. 1981)). There must be

-24-

a finding of other "aggravating factors." Id. The employee does not have to establish that the intended impact of the employer's conduct was to cause her resignation, but rather that her resignation would have been a reasonably foreseeable result of the employer's conduct. Id. at 637.

Defendant moves for summary judgment on Smith's constructive discharge claim, asserting that Smith failed to show that "the Company deliberately created intolerable working conditions, as perceived by a reasonable person, with the intention of forcing and that she actually quit as a result." (Doc. No. 45 at 3.) Specifically, Defendant asserts that the alleged conduct has not met the necessary threshold to maintain a constructive discharge claim and that Smith voluntarily resigned. (Id.) For the reasons stated below, the Court disagrees with Defendant's assertions.

Although a hostile environment alone does not establish constructive discharge, the Court finds that Smith has alleged sufficient aggravating factors to support that a reasonable person in Smith's position would have felt compelled to resign. As previously stated, Cone's conduct included allegedly inappropriate touching and staring, as well as comments on Smith's appearance. Smith further testified that Cone engaged in this kind of behavior once or twice a week. (Doc. No. 28, Ex. 7, Smith Depo., at 127.) Viewing the facts in the light most favorable to Plaintiff-Intervenor, Smith complained to Meyer regarding Cone's behavior. (Id. at 59-60, 64, 108.) Despite these complaints, Meyer failed to act and Cone's conduct continued. (Id. at 129.) Under these circumstance, and especially given Smith's age in contrast to Cone's age, as well as her position as a receptionist and his position as President of the Company, the Court finds that

Smith has alleged sufficient facts to support that a reasonable person would have felt compelled to resign.

Finally, the Court finds that Smith's testimony is inconclusive as to whether she voluntary resigned. In response to Defendant's questioning, Smith testified that she intended to move to Texas regardless of the alleged harassment. (Id. at 133.) However, Smith further stated that she resigned sooner than anticipated due to Defendant's conduct. (Id. at 135-36.) Thus, there is a genuine issue of fact regarding whether Smith voluntarily resigned or left due to Defendant's conduct.

## IV. CONCLUSION

For the reasons stated herein, the Court DENIES Defendant's Motion of Summary Judgment in its entirety.

It is so ORDERED.

Entered this the 21st day of April, 2006.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-26-